1

2

3

4

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 **CENTRAL DISTRICT OF CALIFORNIA**

10

11 SONJA ELNORA MCNEAL,                    CASE NO. EDCV 17-0993 SS

12            Plaintiff,

13      v.                               **MEMORANDUM DECISION AND ORDER**

14 NANCY A. BERRYHILL, Acting
   Commissioner of Social
15 Security,

16            Defendant.

17 _____

18                                I.

19                          **INTRODUCTION**

20

21      Sonja Elnora McNeal ("Plaintiff") seeks review of the final

22 decision of the Acting Commissioner of Social Security (the

23 "Commissioner" or "Agency") denying her applications for social

24 security benefits.  The parties consented, pursuant to 28 U.S.C.

25 § 636(c), to the jurisdiction of the undersigned United States

26 Magistrate Judge.  (Dkt. Nos. 10-12).  For the reasons stated

27 below, the decision of the Commissioner is REVERSED and this case

28

1 is REMANDED for further administrative proceedings consistent with
2 this decision.

3

4                                      **II.**

5                **THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

6

7       To qualify for disability benefits, a claimant must
8 demonstrate a medically determinable physical or mental impairment
9 that prevents the claimant from engaging in substantial gainful
10 activity and that is expected to result in death or to last for a
11 continuous period of at least twelve months. Reddick v. Chater,
12 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).
13 The impairment must render the claimant incapable of performing
14 work previously performed or any other substantial gainful
15 employment that exists in the national economy. Tackett v. Apfel,
16 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C.
17 § 423(d)(2)(A)).

18

19      To decide if a claimant is entitled to benefits, an ALJ
20 conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The
21 steps are:

22

23      (1) Is the claimant presently engaged in substantial gainful
24          activity? If so, the claimant is found not disabled. If
25          not, proceed to step two.
26      (2) Is the claimant's impairment severe? If not, the
27          claimant is found not disabled. If so, proceed to step
28          three.

(3)    Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4)    Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5)    Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert ("VE") or by

reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. part 404, subpart P, appendix 2 (commonly known as "the grids"). <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE. <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000) (citing <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## III.

### THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process in evaluating Plaintiff's case. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 1, 2010, the alleged onset date. (AR 13). At step two, the ALJ found that Plaintiff's disorder of the bilateral knees, right worse than left; disorder of the cervical spine with left-sided radiculopathy and pain in the left shoulder; high blood pressure; and an anxiety disorder are severe impairments. (AR 13). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (AR 13-16).

The ALJ then assessed Plaintiff's RFC and concluded that she can perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),[1] except:

> [Plaintiff] is limited to sitting for four (4) hours total in a normal 8-hour workday with the ability to stand and stretch, not to exceed ten percent (10%) of the workday. She is capable of occasional use of foot pedals with bilateral lower extremities (BLE). In addition, she can perform occasional overhead reaching with the bilateral upper extremities (BUE), but she has no limitation with working at should [sic] level with BUE. However, she can never climb ladders, ropes, or scaffolds and must avoid hazardous work environments, unprotected heights, operating fast or dangerous machinery, and driving commercial vehicles. Finally, she retains the capacity to perform non-complex routine tasks because of symptoms from anxiety related to stress and side effects of medications.

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

(AR 16).  At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  (AR 22).  Based on Plaintiff's RFC, age, education, work experience, and the VE's testimony, the ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including small products assembler, hand packer, and towel roller.  (AR 23-24).  Accordingly, the ALJ found that Plaintiff was not under a disability as defined by the Social Security Act from December 1, 2010, through the date of the decision.  (AR 24).

## IV.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  "[The] court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)).  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." (Id.).  To determine whether substantial evidence supports a finding, the court must " 'consider the record

as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.' " Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

**V.**

**DISCUSSION**

**A.    The ALJ Failed To Properly Assess Plaintiff's Fibromyalgia As A Severe Impairment At Step Two Of The Evaluation**

Plaintiff contends that the ALJ "failed to properly consider relevant medical evidence . . . in the assessment of [her] residual functional capacity." (Dkt. No. 21 at 3). Specifically, Plaintiff argues that the ALJ "complete[ly] disregard[ed] . . . Plaintiff's allegations of disability in reference to her diagnosis of fibromyalgia." (Id. at 5). The Court agrees.

By its own terms, the evaluation at step two is a de minimis test intended to weed out the most minor of impairments. See Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987) (O'Connor, J., concurring); Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001) ("We have defined the step-two inquiry as a de minimis screening device to dispose of groundless claims."). An impairment is not severe only

if the evidence establishes a slight abnormality that has only a minimal effect on an individual's ability to work. Smolen, 80 F.3d at 1290.

Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." Benecke v. Barnhart, 379 F.3d 587, 589 (9th Cir. 2004). Typical symptoms include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease." Id. at 590. However, those suffering from fibromyalgia have normal muscle strength, sensory functions, and reflexes. Revels v. Berryhill, 874 F.3d 648, 656 (9th Cir. 2017). Because "there are no laboratory tests to confirm the diagnosis," fibromyalgia is assessed "entirely on the basis of patients' reports of pain and other symptoms." Benecke, 379 F.3d at 590; see Revels, 874 F.3d at 657 (a "diagnosis of fibromyalgia does not rely on X-rays or MRIs"). The Agency recognizes that a person suffers from fibromyalgia if:

(1) she has widespread pain that has lasted at least three months (although the pain may "fluctuate in intensity and may not always be present"); (2) she has experienced repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, "especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable

8

bowel syndrome"; and (3) there is evidence that other disorders are not accounting for the pain.

Revels, 874 F.3d at 657 (quoting SSR 12-2p, at *3). Furthermore, because the symptoms of fibromyalgia "wax and wane," "after a claimant has established a diagnosis of fibromyalgia, an analysis of her RFC should consider 'a longitudinal record whenever possible.' " Id. (quoting SSR 12-2p, at *6).

Here, Plaintiff's fibromyalgia is well established by the record. Plaintiff was first diagnosed with fibromyalgia in 2010. (AR 616). The diagnosis was based upon the presence of tenderness at specified tender points when pressure was applied and by pain being present in all four body quadrants. (AR 616). In May 2014, Plaintiff presented to the Dignity Health emergency department complaining of a burning sensation in her heels causing leg pain, evaluated as 7/10, worse on the right side and at night. (AR 539). Upon Plaintiff's release, the pain was attributed to fibromyalgia. (AR 544). In August 2014, Plaintiff complained of a several-month history of burning dysesthesias in her feet, right greater than left.[2] (AR 491). Weight bearing had no effect on this condition. (AR 491). Clifford D. Merkel, M.D., an orthopedic surgeon, examined Plaintiff and ruled out a primary foot pathology. (AR

_____

[2] Dysesthesia is defined as impairment of any sense, especially that of touch. Dorland's Illustrated Medical Dictionary 517 (27th ed. 1988).

490-91). Instead, he diagnosed fibromyalgia and a history of degenerative disc disease. (AR 491).

Defendant contends, however, that "there is at best conflicting information as to the continuing existence of an active, medically determinable impairment." (Dkt. No. 24 at 5) (emphasis added). To the contrary, throughout the relevant period, Plaintiff's treating doctors consistently diagnosed fibromyalgia, anxiety disorder, and chronic pain syndrome.[3] (AR 497, 498, 499, 502, 504, 507, 508, 575, 578, 584, 586, 615). Furthermore, Plaintiff often complained of somatic symptoms that are associated with fibromyalgia, see SSR 12-2p, at *3 & n.9, including numbness (AR 352, 394), shortness of breath (id. 352, 408), muscle weakness (id. 356, 388, 394), muscle pain (id. 391, 408, 414, 416, 417, 422), abdominal pain (id. 399), and chest pain (id. 410).

Defendant argues that "for all the limited references to fibromyalgia, it does not appear that a doctor performed an examination revealing the required number of tender points with an appropriate distribution." (Dkt. No. 24 at 6). However, in May 2015, Plaintiff described the intensity of her tender points as

---

[3]    "Chronic pain syndrome is not really one disease, but rather a wide array of different conditions or diseases that result in severe and long-lasting pain.  Conditions that fall under the wider umbrella of this syndrome are things like osteoarthritis and fibromyalgia.  They're conditions that leave the patient with significant pain that lasts for months or years." <http://www.fibromyalgiatreating.com/chronic-pain-syndrome/> (last visited April 24, 2018).  Anxiety disorder is a condition that typically co-occurs with fibromyalgia.  SSR 12-2p at *3 & n.10.

"severe." (AR 616). Plaintiff reported episodic flare-ups with symptom-free periods in between. (AR 616). Tender spots included the upper back, both scapular regions, shoulders, the lower posterior neck and both sub-clavicular areas. (AR 616). Associated symptoms included joint stiffness and crepitation. (AR 616). After examination and testing, Plaintiff was assessed with generalized osteoarthritis, anxiety disorder, and fibromyalgia. (AR 617-18). In April 2015, the diagnosis was confirmed. (AR 627). Even if an ALJ found this evidence insufficient to determine if Plaintiff has a medically determinable impairment of fibromyalgia (which is not a conclusion this Court reaches), the Agency should have sought additional information from Plaintiff or her physicians or ordered a consultative examination. See SSR 12-2p, at *4-5; see also Bustamante, 262 F.3d at 954 (ALJ has an affirmative duty to assist the claimant in developing the record).

Furthermore, Plaintiff's fibromyalgia significantly affected her ability to work. Victor Fu, M.D., Plaintiff's primary care physician, diagnosed chronic pain syndrome and fibromyalgia and opined that because of her pain, Plaintiff was precluded from any prolonged standing or walking.[4] (AR 510-11). Dr. Fu concluded that Plaintiff could stand or walk less than two hours and sit only two-to-four hours in an eight-hour workday. (AR 510). Plaintiff can lift only ten pounds and her pain medications will likely affect her ability to work. (AR 511). As the Ninth Circuit

---

[4] Plaintiff testified that she began seeing Dr. Fu in January 2014 for treatment of her fibromyalgia. (AR 35-36).

recently observed in Revels: "In evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods . . . . The failure to do so is error, as is true here." 874 F.3d at 662.

Defendant contends that Plaintiff received medication for fibromyalgia only for a few months at the beginning of 2015. (Dkt. No. 24 at 6-7). To the contrary, during the relevant period, Plaintiff was prescribed a variety of medications for her fibromyalgia pain and associated anxiety and chronic pain syndrome, including Flexeril (cyclobenzaprine), Norco, hydrocodone, Ibuprofen 800mg, Ultram (tramadol), Lidocaine patches, Neurontin (gabapentin), Lidoderm patches, Vicodin, Alprazolam, and Xanax. (AR 256, 311, 328, 331, 352, 471-85, 575-76, 584, 615, 616, 619, 622-23, 628, 632, 634).

Because a step-two evaluation is to dispose of "groundless claims," and the evidence here established that Plaintiff suffers from fibromyalgia, the ALJ erred by not addressing this ailment. See Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005). The evidence in the record was sufficient for the ALJ to conclude that Plaintiff's fibromyalgia is a severe impairment at step two under the de minimis test.

Although Defendant argues that this error was harmless (Dkt. No. 24 at 7-8), the Court disagrees. Because "[s]tep two is merely a threshold determination[,] . . . [i]t is not meant to identify

the impairments that should be taken into account when determining the RFC." Buck v. Berryhill, 869 F.3d 1040, 1048-49 (9th Cir. 2017). Thus, a step-two error is harmless if the impairment was, in fact, considered in assessing the claimant's RFC. Id. at 1049 ("The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not.") (emphasis in original). Accordingly, where as in Buck, "all impairments were taken into account" in assessing the claimant's RFC, no remand is required. Id. Here, however, the ALJ did not account in the RFC for the limitations documented by Plaintiff's fibromyalgia, as discussed above. By failing to recognize Plaintiff's fibromyalgia as severe, the ALJ did not provide adequate consideration to all of Plaintiff's limitations during the five-step evaluation process.

For the foregoing reasons, the matter is remanded for further proceedings. On remand, the ALJ must evaluate Plaintiff's fibromyalgia as a severe impairment at step-two and include limitations imposed by Plaintiff's fibromyalgia in the ALJ's overall evaluation of Plaintiff.[5]

---

[5]    Plaintiff also argues that the ALJ failed to account for her migraine headaches. (Dkt. No. 4-5). However, unlike Plaintiff's fibromyalgia, the record supporting Plaintiff's migraine complaints is quite sparse. Further, it appears that her migraines have been successfully controlled with over-the-counter medications. (AR 388).

**B.** **The ALJ's Reasons for Discrediting Plaintiff's Subjective Symptom Testimony Were Not Supported By Substantial Evidence**

In an April 2013 Function Report, Plaintiff indicated that she is unable to work due to muscle spasms, anxiety, migraines, and pain in her shoulders, upper back, and knees. (AR 280). She cannot stand very long without needing to rest. (AR 280, 285). She uses a knee brace to help her ambulate. (AR 286). Plaintiff is able to prepare meals and do housework as long as she can frequently sit down. (AR 282). Her impairments affect her ability to lift, squat, bend, stand, kneels, climb, and concentrate. (AR 285). Plaintiff's medications cause dizziness and drowsiness. (AR 287).

In November, Plaintiff completed a second Function Report. (AR 297-304). She reported eating primarily frozen meals and doing light household chores. (AR 299). Her social activities are limited because she cannot walk or sit for a long period of time. (AR 302). Her impairments limit her ability to lift, squat, bend, walk, kneel, climb, and complete tasks. (AR 302). Plaintiff is able to walk only five blocks before needing to rest. (AR 302). She is sometimes unable to complete tasks because of medication side effects and stress. (AR 302).

Plaintiff testified that she is unable to work due to symptoms related to her fibromyalgia, arthritis, chronic migraines, anxiety, hypertension, angina, cervical radiculopathy, back problems, and a lump in her right breast. (AR 43). Because of her ailments, she

experiences anxiety and chronic pain in her shoulders, back, legs, and feet. (AR 48, 56). Her pain, anxiety, and side effects from her medications affect her ability to concentrate. (AR 56-57). To alleviate the pain and anxiety, she needs to lie down two to three times daily for an hour. (AR 57-58).

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014). "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (emphasis in original) (citation omitted). "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Id. (citation omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. Trevizo, 871 F.3d at 678 (citation omitted); see also Smolen, 80 F.3d at 1284 ("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883

(9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." Garrison, 759 F.3d at 1015 (citation omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider the following:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms.

Smolen, 80 F.3d at 1284; accord Burrell, 775 F.3d at 1137. However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (citation omitted).

Further, the ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted); see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.") (citation omitted). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," and the ALJ did not make a finding of malingering. (AR 17). Nevertheless, the ALJ concluded that Plaintiff's symptom testimony was "not credible to the extent [it was] inconsistent with the . . . residual functional capacity assessment." (AR 17). However, the ALJ must take into account the claimant's subjective

symptoms before determining the RFC.  Laborin v. Berryhill, 867 F.3d 1151, 1154 (9th Cir. 2017).  "To determine the RFC first and then assess the claimant's testimony is to put the cart before the horse."  Revels, 874 F.3d at 666 (emphasis in original) (citation and alterations omitted); see Laborin, 867 F.3d at 1154 ("Because the claimant's symptom testimony must be taken into account when the ALJ assesses the claimant's RFC, it cannot be discredited because it is inconsistent with that RFC.").  While this approach may not be reversible error, when combined with the ALJ's failure to provide clear and convincing reasoning for rejecting Plaintiff's subjective symptoms, the Court concludes that the ALJ's failure to credit Plaintiff's testimony was error.  See Revels, 874 F.3d at 666.  As discussed below, the ALJ did not consider Plaintiff's subjective statements in light of her fibromyalgia.

The ALJ found that "the objective medical evidence fails to support [Plaintiff's] allegations."  (AR 17).  The ALJ highlighted multiple examinations that had generally normal results, such as a spinal examination, CT scans, x-rays of the knees and feet, EKG, and an MRI of the cervical spine.  (AR 17-19; see id. 354, 413, 434, 441-43, 491-93, 500-01, 527, 573, 581-83).  The ALJ also cited medical records indicating a normal gait, full range of motion in the cervical and lumbar spine, and a normal straight-leg-raising test.  (AR 18; see id. 434).  However, as discussed above, these examination results "are perfectly consistent with debilitating fibromyalgia."  Revels, 874 F.3d at 666. Fibromyalgia is diagnosed "entirely on the basis of patients' reports of pain and other symptoms," and "there are no laboratory tests to confirm the

diagnosis." Benecke, 379 F.3d at 500. Indeed, fibromyalgia is diagnosed, in part, by running tests to eliminate the possibility that another condition accounts for a patient's symptoms. SSR 12-2p, at *3.

The ALJ also erred in rejecting Plaintiff's testimony because her doctors supposedly "maintained a conservative course of treatment." (AR 19). Defendant contends that "Plaintiff received essentially conservative treatment, which was effective when Plaintiff was compliant with treatment, and did not need any surgery or invasive treatment." (Dkt. No. 24 at 14). However, "[a]ny evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated." Revels, 874 F.3d at 667. Fibromyalgia is treated with medications and self-care, including physical therapy. See Mayo Clinic, Fibromyalgia, available at www.mayoclinic.org (last visited April 25, 2018). "The emphasis is on minimizing symptoms and improving general health." Id. Plaintiff attended physical therapy sessions and was prescribed a variety of medications for her fibromyalgia pain and associated chronic pain syndrome and anxiety, including Flexeril (cyclobenzaprine), Norco, hydrocodone, Ibuprofen 800mg, Ultram (tramadol), Lidocaine patches, Neurontin (gabapentin), Lidoderm patches, Vicodin, Alprazolam, and Xanax. (AR 256, 311, 328, 331, 352, 471-85, 575-76, 584, 615, 616, 619, 622-23, 628, 632, 634). "The ALJ provided no explanation why [s]he deemed this treatment 'conservative' for fibromyalgia." Revels, 874 F.3d at 667.

Finally, the ALJ erred in relying on Plaintiff's description of her "limited daily activities" to reject her credibility. (AR 20). "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison, 759 F.3d at 1016. If a claimant's level of activity is inconsistent with the claimant's asserted limitations, it has a bearing on credibility. Id. "Though inconsistent daily activities may provide a justification for rejecting symptom testimony, the mere fact that a plaintiff has carried on certain daily activities does not in any way detract from her credibility as to her overall disability." Revels, 874 F.3d at 667 (citation and alterations omitted); see Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities does not in any way detract from her credibility as to her overall disability.") (citation and alterations omitted). Indeed, a claimant "does not need to be utterly incapacitated in order to be disabled." Benecke, 379 F.3d at 594 (citation omitted).

Here, the ALJ does not identify any inconsistencies among Plaintiff's testimony, her written function reports, or her complaints to her doctors. (See generally AR at 20). Instead, the ALJ merely relied on Plaintiff's statements in which she described a number of activities she might do in a day, including attending to personal care needs, watching TV and reading books,

washing dishes and laundry, preparing meals, performing "light" housework, shopping, driving, and caring for her granddaughter. (AR 20). However, "the ALJ did not elaborate on <u>which</u> daily activities conflicted with <u>which</u> part of [Plaintiff's] testimony." <u>Burrell</u>, 775 F.3d at 1138 (emphasis in original). Furthermore, the ALJ failed to acknowledge that in her function reports, Plaintiff consistently asserted that due to her ailments, she cannot stand very long without needing to rest. (AR 280, 285). She uses a knee brace to help her ambulate. (AR 286). Plaintiff is able to walk only five blocks before needing to rest. (AR 302). She is able to prepare frozen meals and do light housework as long as she can frequently sit down. (AR 282, 299). Plaintiff's medications cause dizziness and drowsiness. (AR 284, 287, 297, 302). Her social activities are limited because she cannot walk or sit for a long period of time. (AR 302). She needs someone to accompany her when she goes places because she sometimes gets dizzy and is afraid she will fall. (AR 284, 301). "That [Plaintiff] could participate in some daily activities does not contradict the evidence of otherwise severe problems that she encountered in her daily life during the relevant period." <u>Diedrich v. Berryhill</u>, 874 F.3d 634, 643 (9th Cir. 2017).

Defendant asserts that "while Plaintiff alleged she could only perform limited daily activities due to disabling limitations, the ALJ duly found that Plaintiff had acknowledged that she could perform extensive daily activities." (Dkt. No. 24 at 14). However, the ALJ did not explain how Plaintiff's daily activities are transferable to a work setting. "[I]f a claimant is able to spend

21

a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain." Fair, 885 F.2d at 603 (emphasis in original). However, the ALJ "must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." Orn, 495 F.3d at 639 (citation and alteration omitted). Here, the ALJ neither made specific findings nor pointed to any record evidence to support her conclusion that Plaintiff's daily activities were "transferable" to a work setting. See Orn, 495 F.3d at 639.

The ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's subjective symptoms. The matter is remanded for further proceedings. On remand, the ALJ shall reevaluate Plaintiff's symptoms in accordance with SSR 16-3p, taking into account the full range of medical evidence.

## C. The ALJ Failed To Properly Weigh The Treating Physicians' Opinions

An ALJ must afford the greatest weight to the opinion of the claimant's treating physician. The opinions of treating physicians are entitled to special weight because the treating physician is hired to cure and has a better opportunity to know and observe the claimant as an individual. Connett v. Barnhart, 340 F.3d 871, 874

(9th Cir. 2003); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 956-57 (9th Cir. 2002); <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995) (as amended). Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing specific, legitimate reasons, supported by substantial evidence in the record. <u>Id.</u> at 830-31; <u>see</u> <u>Ryan v. Comm'r of Soc. Sec.</u>, 528 F.3d 1194, 1198 (9th Cir. 2008); <u>Orn</u>, 495 F.3d at 632. "If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record," the ALJ shall consider "specified factors in determining the weight it will be given[, including] . . . the length of the treatment relationship and the frequency of examination by the treating physician[ ] and the nature and extent of the treatment relationship between the patient and the treating physician." <u>Orn</u>, 495 F.3d at 631 (citation omitted); <u>see</u> 20 C.F.R. §§ 404.1527(d)(2) (listing factors to consider), 416.927(d)(2) (same).

On November 4, 2013, Eduardo Uy, M.D., Plaintiff's treating physician, completed a physical RFC assessment. (AR 454-55; <u>see</u> <u>id.</u> 308). He opined that Plaintiff is not capable of any prolonged sitting, standing, or walking. (AR 454). She is limited to standing or walking for less than two hours and sitting for two to four hours during an eight-hour workday. (AR 454). Plaintiff is

limited to lifting up to ten pounds and can only occasionally climb, balance, stoop, kneel, crouch. (AR 455).

On November 3, 2014, Dr. Fu, another treating physician, completed a physical RFC assessment.[6] (AR 510-11). Dr. Fu also opined that Plaintiff cannot tolerate prolonged sitting, standing, or walking and is limited to standing or walking for less than two hours and sitting for two to four hours during an eight-hour workday. (AR 510). Dr. Fu limited Plaintiff to frequently lifting ten pounds or less and only occasionally climbing, balancing, stooping, kneeling, crouching, or crawling. (AR 511). He opined that Plaintiff's pain medications would likely affect her ability to work. (AR 511).

In a single-sentence analysis, the ALJ gave these opinions "little weight," finding that the opinions "rel[y] heavily upon [Plaintiff's] subjective report of symptoms and limitations that are not supported by the evidence of record." (AR 20). The ALJ's analysis is contrary to law and not supported by substantial evidence.

First, the ALJ's analysis fails to provide sufficient analysis. A single-sentence conclusion does not provide sufficiently specific reasoning to allow a reviewing court to conclude that an ALJ rejected a treating physician's opinion for

---

[6]   The ALJ assumed that both the November 2013 and the November 2014 assessments were prepared by the same doctor, but they were not. (Compare AR 20, with id. 61, 455, 511).

legitimate reasons supported by substantial evidence.  The ALJ does not describe which of Plaintiff's subjective reports are contrary to the evidence.

Second, "the ALJ erred by failing to apply the appropriate factors in determining the extent to which the opinion[s] should be credited."  Trevizo, 871 F.3d at 676.  The ALJ did not consider factors such as the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of the opinion.  20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).  "This failure alone constitutes reversible legal error."  Trevizo, 871 F.3d at 676.

Finally, the ALJ has not shown with substantial evidence that Plaintiff's self-reports were incredible.  "An ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible."  Tommasetti, 533 F.3d at 1041 (citation omitted).  As discussed above, the ALJ failed to give specific, clear, and convincing reasons for discrediting Plaintiff's testimony. "Because the ALJ did not properly discount [Plaintiff's] testimony, this reason fails."  Burrell, 775 F.3d at 1141 (emphasis in original) (citation and alterations omitted).

Defendant contends that Drs. Yu's and Fu's opinions were not supported by the record.  (Dkt. No. 24 at 11).  However, the Court is "constrained to review the reasons the ALJ asserts."  Connett, 340 F.3d at 874 (citing Sec. & Exch. Comm'n v. Chenery Corp., 332

25

U.S. 194, 196 (1947)). The Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Garrison, 759 F.3d at 1010. Here, the ALJ did not base his rejection of Drs. Yu's and Fu's opinions on the medical record. (AR 20).

In sum, the ALJ failed to provide specific and legitimate reasons for rejecting Drs. Yu's and Fu's opinions. On remand, the ALJ shall reevaluate the weight to be afforded Drs. Yu's and Fu's opinions. If the ALJ finds appropriate reasons for not giving the opinions controlling weight, the ALJ may not reject the opinions without providing specific and legitimate reasons supported by substantial evidence in the record.

**D.  The ALJ's RFC Assessment Is Not Supported By Substantial Evidence**

The ALJ concluded that Plaintiff has the RFC to perform light work "except she is limited to sitting for four (4) hours total in a normal 8-hour workday with the ability to stand and stretch, not to exceed ten percent (10%) of the workday." (AR 16). Plaintiff contends that it is "unclear from the ALJ's residual functional capacity exactly how much of the work day the ALJ believes [Plaintiff] is capable of standing and/or walking." (Dkt. No. 21 at 3. The Court agrees.

Defendant contends that "the ALJ's hypothetical question to the vocational expert (VE) confirms that the ALJ contemplated up

to 6 hours standing and walking in addition to up to 4 hours of sitting – with an option to stand and stretch for up to 10% of the workday or 48 minutes." (Dkt. No. 24 at 3; see AR 65-66). While this is _likely_ what the ALJ contemplated, the Court is "constrained to review the reasons the ALJ asserts." Connett, 340 F.3d at 874; see Garrison, 759 F.3d at 1010. Because the Court does not _know_ how many hours the ALJ found Plaintiff capable of standing and walking, the Court cannot confirm whether the ALJ's RFC determination was supported by substantial evidence. See Brown-Hunter, 806 F.3d at 492 ("we still demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review"). Thus, the Court cannot determine whether the VE's testimony, opining that there are jobs in the national economy that Plaintiff can perform, had any evidentiary value. Cf. Bray, 554 F.3d at 1228 ("Hypothetical questions posed to a VE must set out _all_ the limitations and restrictions of the particular claimant. If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."") (citations and alterations omitted).

**VI.**

**CONCLUSION**

Accordingly, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. IT IS FURTHER

ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.


DATED:  May 2, 2018


                                    _____
                                           /S/
                                    SUZANNE H. SEGAL
                                    UNITED STATES MAGISTRATE JUDGE




**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS/NEXIS, WESTLAW OR ANY OTHER LEGAL DATABASE.**